UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE HEDRON HOLDINGS, LLC, AS OWNER, AND TRITON DIVING SERVICES, LLC, AS BAREBOAT CHARTERER AND OWNER PRO HAC VICE OF D/B EPIC HEDRON, PETITIONING FOR EXONERATION FROM AND/OR LIMITATION OF LIABILITY | § § § § § § § § § | CIV. A. NO.: 2:22-cv-00205<br><br>JUDGE GUIDRY<br><br>MAG. JUDGE DOUGLAS<br><br><br>**ADMIRALTY** |

**ANSWER, AFFIRMATIVE DEFENSES, AND CLAIM OF TALOS PRODUCTION INC., TALOS ENERGY LLC, AND TALOS ENERGY OPERATING COMPANY LLC**

NOW COME, defendants/claimants, Talos Production Inc. ("TPI"), Talos Energy LLC ("TE") and Talos Energy Operating Company LLC ("TEOC", hereafter all three are sometimes collectively referred to as "Talos"), and file their answer, affirmative defenses and claim in response to the Verified Complaint for Exoneration from and/or Limitation of Liability (Doc. 1, hereafter "Complaint") filed by petitioners, Hedron Holdings, LLC ("Holdings") and Triton Diving Services, LLC ("Triton", sometimes collectively with Holdings referred to as "Petitioners"), on information and belief, as follows:

**ANSWER AND AFFIRMATIVE DEFENSES TO COMPLAINT**

Talos answers the Complaint as follows:

**FIRST AFFIRMATIVE DEFENSE**

The Complaint fails to state a claim upon which relief may be granted.

**SECOND AFFIRMATIVE DEFENSE**

Talos reserves the right to contest the appraised value of the D/B EPIC HEDRON (hereafter "HEDRON") as well as its engines, apparel, appurtenances, attachments, pending

freight/charter hire, and the adequacy of security.

### THIRD AFFIRMATIVE DEFENSE

In the alternative, the casualty and damages relating to this limitation proceeding were caused in whole or in part by the unseaworthiness of the HEDRON and/or were due to the negligence, fault, and/or want of due care of Petitioners and their agents and employees, all of which were within the privity and knowledge of Petitioners.

### FOURTH AFFIRMATIVE DEFENSE

To the extent the insurers or underwriters of Petitioners attempt to avail themselves of the limitation defense, the protections of the Shipowners Limitation of Liability Act, 46 U.S.C. § 30501 *et seq.*, are unavailable to them under the circumstances and the language of their policies.

### ANSWER

AND NOW, answering the individual allegations of the Complaint, Talos alleges and avers as follows:

1.

Talos denies the allegations of Paragraph 1 of the Complaint for lack of knowledge or information sufficient to form a belief.

2.

Talos denies the allegations of Paragraph 2 of the Complaint for lack of knowledge or information sufficient to form a belief.

3.

Talos denies the allegations of Paragraph 3 of the Complaint for lack of knowledge or information sufficient to form a belief.

4.

The allegations of Paragraph 4 pertain to the propriety of venue in this Court, and therefore, no answer is required on the part of Talos; however, to the extent this Court requires an answer thereto, Talos admits the allegations of Paragraph 4.

5.

The allegations of Paragraph 5 pertain to this Court subject matter jurisdiction, and therefore, no answer is required on the part of Talos; however, to the extent this Court requires an answer thereto, Talos admits that this Court has subject matter jurisdiction pursuant to its admiralty and maritime jurisdiction, 28 U.S.C. § 1333, as well as its federal question jurisdiction, 28 U.S.C. § 1331, pursuant to the Outer Continental Shelf Lands Act, 43 U.S.C. § 1349(b)(1).

6.

Talos denies the allegations of Paragraph 6.

7.

Talos admits and avers that on July 8, 2021, TPI, and its affiliated and subsidiary companies (and thus TE and TEOC), entered into a Master Service Agreement with Triton. Talos also admits and avers that on July 8, 2021, TPI awarded Triton Offshore, LLC (and thus Triton) a turnkey contract, subject to the terms, conditions and provisions of the aforementioned Master Service Agreement, to decommission and remove platforms K, G and GQ, from Block 198, Ship Shoal Area, on the Outer Continental Shelf, off the coast of Louisiana (hereafter "SS 198"). Copies of both agreements and Triton's January 29, 2021, bid/proposal, are hereafter referred to collectively as the "Triton MSA", true and accurate copies of each are attached hereto as Exhibit 1. Talos further admits that on or about August 26, 2021, the HEDRON raised its anchors and was towed from the vicinity of SS 198 G to Port Fourchon seeking safe harbor from the effects of Hurricane

Ida. Except as expressly admitted and averred, Talos denies the truth of the remaining allegations of Paragraph 7.

8.

Talos admits that the HEDRON was moored at Port Fourchon on the afternoon of August 27, 2021. Except as expressly admitted, Talos denies the truth of the remaining allegations of Paragraph 8.

9.

Talos admits the truth of the allegations of Paragraph 9.

10.

Talos admits that the HEDRON was moored at or near Port Fourchon on August 29, 2021, that the HEDRON broke from her moorings, and thereafter drifted through the jetties and into waters outside of Louisiana's territorial seas, where her storm anchor was deployed. Except as expressly admitted, Talos denies the truth of the remaining allegations of Paragraph 10 for lack of information or knowledge sufficient to form a belief.

11.

Talos denies the truth of the allegations of Paragraph 11 for lack of information or knowledge sufficient to form a belief.

12.

Talos admits that the HEDRON underwent repairs while at the location in the Gulf of Mexico where she deployed her storm anchor through approximately September 11, 2021. Talos denies the remaining allegations of Paragraph 12.

13.

Talos admits that the Complaint was filed within six (6) months of the casualty. Talos

denies the truth of the remaining allegations of Paragraph 13 for lack of knowledge or information sufficient to form a belief.

14.

Talos denies the truth of the allegations of Paragraph 14 for lack of knowledge or information sufficient to form a belief.

15.

Talos denies the truth of the allegations of Paragraph 15.

16.

Talos denies the truth of the allegations of Paragraph 16 for lack of knowledge or information sufficient to form a belief.

17.

Talos admits that as a result of the Incident, certain persons have alleged personal injuries and/or economic losses. Except as expressly admitted, Talos denies the remaining allegations of Paragraph 17 for lack of knowledge or information sufficient to form a belief.

18.

Talos admits the allegations of Paragraph 18.

19.

Talos admits the allegations of Paragraph 19, except to the extent it alleges that Triton removed the suit of Evan Plybon to the United States District Court for the Southern District of Texas, which is expressly denied. In further answer, Talos avers that TE and TEOC removed the suit of Evan Plybon to the Houston Division of the aforementioned federal court, to which removal Triton consented.

20.

Talos admits the allegations of Paragraph 20, except to the extent it alleges that Triton removed the suit of Michael Cooper to the United States District Court for the Southern District of Texas, which is expressly denied. In further answer, Talos avers that TE and TEOC removed the suit of Michael Cooper to the Houston Division of the aforementioned federal court, to which removal Triton consented.

21.

Talos admits the allegations of Paragraph 21, except to the extent it alleges that Triton removed the suit of Roberto Quezada, Carlos Quezada, Andres Corona, Lamar Lewis and Darren Walker to the United States District Court for the Southern District of Texas, which is expressly denied. In further answer, Talos avers that TE and TEOC removed the suit of Messrs. Quezada, Corona, Lewis and Walker to the Houston Division of the aforementioned federal court, to which removal Triton consented.

22.

Talos admits the allegations of Paragraph 22, except to the extent it alleges that Triton removed the suit of Stefan Mueller, Nero Davis, Grant Luke, Peter Little, Ronnie Matherne, Bobby Nelton, and Jeremy McGuire to the United States District Court for the Southern District of Texas, which is expressly denied. In further answer, Talos avers that TE and TEOC removed the suit of Messrs. Quezada, Corona, Lewis and Walker to the Houston Division of the aforementioned federal court, to which removal Triton consented.

23.

Talos admits the allegations of Paragraph 23.

24.

Talos denies the truth of the allegations of Paragraph 24 for lack of knowledge or information sufficient to form a belief.

25.

Talos denies the truth of the allegations of Paragraph 25 for lack of knowledge or information sufficient to form a belief.

26.

Talos denies the truth of the allegations of Paragraph 26.

27.

Talos denies the truth of the allegations of Paragraph 27 for lack of knowledge or information sufficient to form a belief.

28.

The allegations of Paragraph 28 do not require a response on the part of Talos; however, should this Court require answer thereto, Talos denies the truth of the allegations of Paragraph 28 for lack of knowledge or information sufficient to form a belief.

29.

Talos denies the truth of the allegations of Paragraph 29.

30.

Talos denies the truth of the allegations of Paragraph 30.

31.

Talos denies the truth of the allegations of Paragraph 31.

32.

The allegations of Paragraph 32 do not require a response on the part of Talos; however,

should this Court require an answer thereto, Talos admits the allegations of Paragraph 32.

33.

Talos denies the truth of the allegations of any introductory, prefatory or unnumbered paragraph as well as the Prayer for relief.

## **CLAIM**

AND NOW, assuming the status of claimants, Talos Production Inc., Talos Energy LLC and Talos Energy Operating Company LLC, allege and aver, as follows:

### **Jurisdiction and Venue**

I.

This Court has subject matter jurisdiction over this Claim to enforce the contractual defense and indemnity provisions of the maritime contract discussed herein on the basis of its admiralty and maritime jurisdiction, 28 U.S.C. § 1333.

II.

Venue is proper in this Court pursuant to Admiralty Rule F(9), as well as 28 U.S.C. § 1391(b)(2) & (3).

### **Parties**

III.

Plaintiffs are as follows:

A. TPI, a corporation, authorized to do and doing business within the State of Louisiana and the physical jurisdiction of this Court.

B. TE, a limited liability company, authorized to do and doing business within the State of Louisiana and the physical jurisdiction of this Court. At all times relevant herein,

      TE was and remains a wholly-owned subsidiary of TPI; and,

C. TEOC, a limited liability company, authorized to do and doing business within the State of Louisiana and the physical jurisdiction of this Court. At all times relevant herein, TEOC was and remains a wholly-owned subsidiary of TPI.

IV.

Defendant, Triton, is a limited liability company, authorized to do and doing business within the State of Louisiana and the physical jurisdiction of this Court, such that this Court can properly exercise personal jurisdiction over Triton, having designated Eric Trosclair, 11095 Highway 308, Larose, Louisiana 70373, as its registered agent for service of process. Triton on occasion does business under the trade name of Triton Offshore, LLC.

**Factual Background**

V.

On July 8, 2021, TPI, and its affiliated and subsidiary companies (and thus TE and TEOC), entered into a Master Service Agreement with Triton. Also on July 8, 2021, TPI awarded Triton Offshore, LLC (and thus Triton) a turnkey contract, subject to the terms, conditions and provisions of the aforementioned Master Service Agreement, to decommission and remove platforms K, G and GQ, from Block 198, Ship Shoal Area, on the Outer Continental Shelf, off the coast of Louisiana (hereafter "SS 198"). Copies of both agreements and Triton's January 29, 2021, bid/proposal, are hereafter referred to collectively as the "Triton MSA", true and accurate copies of each are attached hereto as Exhibit 1.

VI.

In that turnkey contract, Triton agreed to supply the following equipment to undertake the decommissioning and removal of Platforms K, G, and GQ from SS 198: the HEDRON, a derrick

barge; an anchor handling tug; a crew boat; a material barge measuring 250 feet by 72 feet; and, a tug to transport and shift the material barge.

VII.

Also in that turnkey contract, Triton identified the subcontractors it would use for various tasks or operations associated with the decommissioning and removal of Platforms K, G, and GQ from SS 198, including C&G Welding Services and Pharma-Safe Industrial Services, Inc.

VIII.

The Triton MSA is a maritime contract based on its substantial connection to the HEDRON, a vessel in navigation, as well as the support vessels Triton agreed to provide, including the anchor handling tug, the crew boat, the material barge and tug for the material barge. The turnkey decommissioning and platform removal work could not have been performed without the use of the vessels identified in the preceding paragraphs.

IX.

Starting on or about August 12, 2021, and continuing through August 26, 2021, the HEDRON was engaged in the decommissioning and removal of Platforms K, G and GQ, when as a result of the approach of Hurricane Ida, Triton determined it would seek safe harbor at a dock specifically used by the HEDRON for this purpose at or near Port Fourchon, Louisiana. At that time, the plan was for the HEDRON to resume the decommissioning and removal of Platforms G and GQ after the storm had passed. Talos was not involved in the decisions to depart the worksite at SS 198 or the selection of the proposed safe harbor.

X.

On August 27, 2021, the HEDRON was secured to a dock near Port Fourchon. At that time, the crew and contractor personnel located on the HEDRON were given the option to depart

the vessel or to stay on board. Talos was not involved in the mooring of the HEDRON, the selection of the mooring configuration of the HEDRON, nor the decision to give the barge crew and contractor personnel the option to leave or to stay on the HEDRON.

XI.

At approximately 10:30 a.m. on August 29, 2021, the HEDRON broke from her moorings at the safe harbor dock, drifted through the Belle Pass jetties and into the waters of the Gulf of Mexico. At a distance of six (6) miles from the coast of Louisiana and outside of Louisiana's territorial waters, the HEDRON dropped her storm anchor, and rode out the remainder of Hurricane Ida, her winds, seas and other storm consequences.

XII.

After repairs were completed at that location, the HEDRON resumed and completed the decommissioning and removal of Platforms G and GQ from SS 198.

**Procedural Background**

XIII.

The following lawsuits have been filed against Talos by employees of Triton and Triton's subcontractors, C&G Welding Services and Pharma-Safe Industrial Services, Inc.:

A. Stefan Mueller, Nero Davis, Grant Luke, Peter Little, Ronnie Matherne, Bobby Nelton, and Jeremy McGuire (hereafter "the Mueller Plaintiffs") filed a civil action naming Talos, Triton, Pharma-Safe Industrial Services, Inc. ("Pharma-Safe"), and C&G Welding Inc. ("C&G"), as the defendants in Cause Number 2021-65951, entitled "*Stefan Mueller, Nero Davis, Grant Luke, Peter Little, Ronnie Matherne, Bobby Nelton, and Jeremy McGuire v. Triton Diving Services, LLC, Talos Energy, LLC, Talos Energy Operating Company, LLC, Pharma-Safe Industrial Services, Inc., and C&G Welding, Inc.*," in the 125th District Court in Harris County, Texas (hereafter "the

Mueller Litigation"). On November 10, 2021, Talos removed the Muller Litigation to the U.S. District Court for the Southern District of Texas, Houston Division, where it was assigned Civil Action No. 4:21-CV-3687. On December 10, 2021, the Mueller Plaintiffs filed a motion to remand to which Talos filed an opposition memorandum. On February 16, 2022, the Texas federal court entered an order staying that civil action in light of this Court's January 31, 2022, Order (Doc. 3), restraining, staying and enjoining the further prosecution of any and all actions, suits and proceedings already commenced and the commencement or prosecution of any and all actions, suits and proceedings against Petitioners and the HEDRON except in this Limitation Proceeding. The Mueller Plaintiffs were all either employees of Triton or subcontractors of Triton.

B.  Plaintiffs, Roberto Quezada, Carlos Quezada, Andres Corona, Lamarr Lewis, and Darren Walker (collectively the "Quezada Plaintiffs") filed a civil action naming Talos, Triton, and C&G, as the defendants in Cause Number 2021-63742, entitled "*Roberto Quezada, Carlos Quezada, Andres Corona, Lamarr Lewis, and Darren Walker v. Triton Diving Services, LLC, Talos Energy, LLC, Talos Energy Operating Company, LLC, and C&G Welding, Inc*.", in the 269th District Court in Harris County, Texas (hereafter the "Quezada Litigation"). On November 26, 2021, Talos removed the Quezada Litigation to the U.S. District Court for the Southern District of Texas, Houston Division, where it was assigned Civil Action No. 4:21-CV-3874. On December 24, 2021, the Quezada Plaintiffs filed a motion to remand to which Talos filed an opposition memorandum. On February 16, 2022, the Texas federal court entered an order staying that civil action in light of this Court's January 31, 2022, Order (Doc. 3), restraining, staying and enjoining the further prosecution of any and all actions, suits and proceedings already commenced and the commencement or prosecution of any and all actions, suits and proceedings against Petitioners and

the HEDRON except in this Limitation Proceeding. The Quezada Plaintiffs were all employees of subcontractors of Triton.

   C. Plaintiff, Michael Cooper filed a civil action naming Talos, Triton, and Pharma-Safe as the defendants in Cause Number 2021-59662, entitled "*Michael Cooper v. Triton Diving Services, LLC, Talos Energy, LLC, Talos Energy Operating Company, LLC, and Pharma-Safe Industrial Services, Inc.*", in the 11th District Court in Harris County, Texas (hereafter the "Cooper Litigation"). On November 26, 2021, Talos removed the Cooper Litigation to the U.S. District Court for the Southern District of Texas, Houston Division, where it was assigned Civil Action No. 4:21-CV-3875. On December 24, 2021, the Mr. Cooper filed a motion to remand to which Talos filed an opposition memorandum. On February 16, 2022, the Texas federal court entered an order staying that civil action in light of this Court's January 31, 2022, Order (Doc. 3), restraining, staying and enjoining the further prosecution of any and all actions, suits and proceedings already commenced and the commencement or prosecution of any and all actions, suits and proceedings against Petitioners and the HEDRON except in this Limitation Proceeding. Mr. Cooper was an employee of a subcontractor of Triton.

XIV.

All of the plaintiffs in the foregoing suits were performing work for Triton in connection with the turnkey contract. They chose to remain on the HEDRON while it was docked near Port Fourchon, and remained on it, when it broke free from the dock, and thereafter. They all claim to have alleged personal injuries as a result of this experience, and have sued TE and TEOC, among others, to recover therefor.

XV.

As will be seen from the following, Triton owes Talos, *inter alia*, (A) complete defense

and indemnity for all claims asserted against it in the Mueller Litigation, the Quezada Litigation, and the Cooper Litigation, and (B) all legal fees and costs incurred by Talos in the defense of the Mueller Litigation, the Quezada Litigation, and the Cooper Litigation, and for all legal fees and costs incurred in compelling Triton to comply with its indemnity and defense obligations owed to Talos.

### Triton's Contractual Defense and Indemnity Obligations to Talos under the Triton MSA

XVI.

Section 7 of the Triton MSA sets forth the reciprocal, or "knock for knock," indemnity obligations of Talos (Company) and Triton (Contractor). Section 7 provides, as follows:

> 7.     The term "**Company Group**" means and includes (both individually and collectively) Company, its parent, subsidiary and affiliated entities; its and their co-lessees, partners, joint venturers, co-owners, and contractors and subcontractors of every tier; and the agents, officers, managers, directors, consultants, invitees, insurers, and employees of each of the foregoing; provided, however, that the term "Company Group" shall not include any Contractor Group member.  The term "**Contractor Group**" means and includes (both individually and collectively) Contractor; its parent, subsidiary and affiliated entities; its and their subcontractors of every tier; and the agents, officers, managers, directors, consultants, invitees, insurers and employees of each of the foregoing. … … The term "**Damages**" means damages, losses, claims, causes of action, demands, suits, judgments, awards, adjustments, remediation requirements, obligations to indemnify another, costs and expenses of any kind or character (including without limitation reasonable attorneys' and other legal expenses and including without limitation for enforcement of the indemnity and Defense obligations under this Agreement); costs and liabilities relating to wreck removal.  For the purposes of group membership determination, an employee shall always be a member of the group that includes the employer from whom he receives his paycheck.

(Exh. 1, Triton MSA, pp. 2-3, para. 7.)

XVII.

Section 7(d) of the Triton MSA provides the following:

> (d)    CONTRACTOR HEREBY RELEASES, AND SHALL PROTECT, DEFEND, INDEMNIFY AND HOLD HARMLESS, THE COMPANY GROUP

AND THEIR INSURERS FROM AND AGAINST ALL DAMAGES (WITHOUT LIMITATION AND WITHOUT REGARD TO THE CAUSE OR CAUSES THEREOF, AND WHETHER OR NOT ARISING IN WHOLE OR IN PART OUT OF STRICT OR STATUTORY LIABILITY, THE NEGLIGENCE (SOLE, CONCURRENT, CONTINGENT OR OTHERWISE) OR OTHER FAULT OF THE COMPANY GROUP OR ANY OTHER PERSON OR ENTITY, THE UNSEAWORTHINESS OF ANY VESSEL OR THE UNAIRWORTHINESS OF ANY AIRCRAFT, BREACH OF CONTRACT, VIOLATION OF LAW, ANY PRE-EXISTING CONDITION OR OTHERWISE) ARISING OUT OF OR RELATED TO (1) THE INJURY, ILLNESS OR DEATH (OR THE LOSS OR DAMAGE OF ANY PROPERTY) OF ANY OR ALL THE CONTRACTOR GROUP (INCLUDING WITHOUT LIMITATION AS MAY BE PURSUED BY ANY OF THEIR HEIRS, DEPENDENTS, SPOUSES, RELATIVES, ESTATES OR SUCCESSORS OR BY WAY OF CONTRACTUAL INDEMNITY) IN ANY WAY DIRECTLY OR INDIRECTLY ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT, ANY BRIDGING AGREEMENT, ANY WORK OR ANY PRESENCE ON ANY PREMISES (OR MODE OF TRANSPORTATION) IN CONNECTION THEREWITH. … … THE OBLIGATIONS SET FORTH IN THIS PARAGRAPH 7(d) SHALL COVER WITHOUT LIMITATION ANY MEDICAL, COMPENSATION OR OTHER BENEFITS PAID BY COMPANY IN CONNECTION WITH EMPLOYEES OF CONTRACTOR (OR ITS SUBCONTRACTORS, IF ANY) AND SHALL APPLY EVEN IF THE EMPLOYEE IS DETERMINED TO BE THE STATUTORY OR BORROWED EMPLOYEE OF COMPANY.

(*Id*., p. 3, para. 7(d).)

XVIII.

As concerns the Mueller Plaintiffs, Triton was the employer of Mr. McGuire; Triton subcontractor, Pharma-Safe, was the employer of Mr. Mueller; and, Triton subcontractor, C&G, was the employer of Messrs. Davis, Little, Luke, Matherne and Nelton.

XIX.

Mr. McGuire, as an employee of Triton, and any other employee of Triton who may in the future file suit or a claim against TPI, TE, TEOC, or any other affiliate or subsidiary of Talos Production Inc. as a result of the effects of Hurricane Ida, her winds, seas and other storm effects on the D/B HEDRON are hereafter referred to as the "Triton Employees". The Triton Employees

are members of the Contractor Group, as defined in the Triton MSA.

XX.

All of the Quezada Plaintiffs were employed by C&G.  Hereafter, Messrs. Corona, Davis, Lewis, Little, Luke, Matherne, Nelton, Carlos Quezada, Roberto Quezada, and Walker, and any other employee of C&G who may in the future file suit or a claim against TPI, TE, TEOC, or any other affiliate or subsidiary of Talos Production Inc. as a result of the effects of Hurricane Ida, her winds, seas and other storm effects on the D/B HEDRON are collectively referred to as the "C&G Employees".  Because C&G was a subcontractor of Triton, and C&G employed the C&G Employees, all of the C&G Employees are members of the Contractor Group as defined in the Triton MSA.

XXI.

Pharma-Safe employed Messrs. Cooper and Mueller.  Hereafter, Messrs. Cooper, Mueller, and any other employee of Pharma-Safe who may in the future file suit or a claim against TPI, TE, TEOC or any other affiliate or subsidiary of Talos Production Inc. as a result of the effects of Hurricane Ida, her winds, seas and other storm effects on the D/B HEDRON, are collectively referred to as the "Pharma-Safe Employees".  Because Pharma-Safe was a subcontractor of Triton, and Pharma-Safe employed the Pharma-Safe Employees, all of the Pharma-Safe Employees are members of the Contractor Group, as defined in the Triton MSA.

XXII.

Any employees of Triton's other subcontractors who may in the future file suit or a claim against TPI, TE, TEOC, or any other affiliate or subsidiary of Talos Production Inc. as a result of the effects of Hurricane Ida, her winds, seas and other consequences on the D/B HEDRON are referred to as the "Other Subcontractor Plaintiffs".  Because the Other Subcontractor Plaintiffs

were employed by Triton's subcontractors, all of the Other Subcontractor Plaintiffs are members of the Contractor Group, as defined in the Triton MSA.

XXIII.

Accordingly, Triton is obligated to defend, indemnify and hold harmless Talos from all claims asserted against it in the Mueller Litigation, the Quezada Litigation and the Cooper Litigation as well as any suits or claims that may be asserted against Talos by the Triton Employees, the C&G Employees, the Pharma-Safe Employees or the Other Subcontractor Plaintiffs. Talos has previously made demand against Triton that it fully indemnify, defend, and hold harmless Talos from the claims asserted against it in the Mueller Litigation, the Quezada Litigation and the Cooper Litigation.

XXIV.

Under Paragraph 7 of the Triton MSA, Triton's indemnity obligations extend to any attorney and expert fees, court costs and other expenses incurred by Talos in the enforcement of the indemnity and defense obligations owed by Triton under the Triton MSA, such as the filing of the instant lawsuit.

XXV.

On the basis of the Triton MSA, Talos is entitled to a judgment against Triton that Triton is obligated to: 1) defend, indemnify and hold harmless Talos from all claims asserted against it by all plaintiffs in the Mueller Litigation, the Quezada Litigation and the Cooper Litigation; 2) defend, indemnify and hold harmless Talos from all suits and claims that may be asserted against it in the future by the Triton Employees, the C&G Employees, the Pharma-Safe Employees and/or the Other Subcontractor Plaintiffs; and 3) reimburse Talos all legal fees and costs incurred in defending the Mueller Litigation, the Quezada Litigation and the Cooper Litigation as well as any

future suits or claims filed against Talos by the Triton Employees, the C&G Employees, the Pharma-Safe Employees and/or the Other Subcontractor Plaintiffs, and incurred in compelling Triton to honor its defense and indemnity obligations to Talos.

XXVI.

Further, Talos requests that this Court award it pre-judgment and post-judgment interest on all amounts that this Court determines are owed to Talos by Triton.

WHEREFORE, defendants/claimants, Talos Production Inc., Talos Energy LLC and Talos Energy Operating Company LLC, pray that after all due proceedings had, that judgment be entered in favor of Talos Production Inc., Talos Energy LLC and Talos Energy Operating Company LLC and against Triton Diving Services, LLC, ordering:

1. Triton Diving Services, LLC to fully defend, indemnify and hold harmless Talos Production Inc., Talos Energy LLC and Talos Energy Operating Company LLC from and against all claims asserted against them in the Mueller Litigation, the Quezada Litigation and the Cooper Litigation, as defined above;

2. Triton Diving Services, LLC to fully defend, indemnify and hold harmless Talos Production Inc., Talos Energy LLC and Talos Energy Operating Company LLC from and against all claims or suits that may be asserted against them in the future by the Triton Employees, the C&G Employees, the Pharma-Safe Employees, and the Other Subcontractor Plaintiffs, as defined above;

3. Triton Diving Services, LLC to fully reimburse Talos Production Inc., Talos Energy LLC and Talos Energy Operating Company LLC for all legal fees and costs incurred in defending the Mueller Litigation, the Quezada Litigation and the Cooper Litigation, in defending any future suits or claims that might be filed in the

future against one or both of them by the Triton Employees, the C&G Employees, the Pharma-Safe Employees and/or the Other Subcontractor Plaintiffs, as defined above, and in compelling Triton Diving Services, LLC to honor its defense and indemnity obligations to Talos Production Inc., Talos Energy LLC and Talos Energy Operating Company LLC through this complaint and subsequent proceedings.

4. Recovery by Talos, as defined above, for prejudgment and post judgment interest on all amounts Triton Diving Services, LLC owes to Talos Production Inc., Talos Energy LLC and Talos Energy Operating Company LLC, and

5. All other equitable and just relief which Talos, as defined above, is entitled and this Court is competent to grant.

Respectfully submitted,

**KING & JURGENS, L.L.C.**

/s/   James D. Bercaw
GEORGE B. JURGENS, III, T.A. (#7602)
JAMES D. BERCAW (#20492)
JEDD S. MALISH (#23846)
201 St. Charles Avenue, 45th Floor
New Orleans, Louisiana 70170
Telephone: (504) 582-1272
Facsimile: (504) 582-1233
gjurgens@kingjurgens.com
jbercaw@kingjurgens.com
jmalish@kingjurgens.com

*Attorneys for defendants/claimants,*
*Talos Production Inc., Talos Energy LLC*
*and Talos Energy Operating Company LLC*