UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE HEDRON HOLDINGS, LLC, | * | CIVIL ACTION |
| AS OWNER, AND TRITON DIVING | * | |
| SERVICES, LLC AS BAREBOAT | * | NO. 22-205 |
| CHARTERER AND OWNER *PRO* | * | |
| *HAC VICE* OF D/B EPIC HEDRON | * | SECTION "T" |
| PETITIONING FOR EXONERATION | * | |
| FROM AND/OR LIMITATION OF | * | JUDGE GUIDRY |
| LIABILITY | * | |
| | * | MAGISTRATE JUDGE DOUGLAS |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * *

**ANSWER TO COMPLAINT IN LIMITATION AND CLAIM OF**
**ENERGY XXI GOM, LLC; EPL OIL & GAS, LLC AND ARENA ENERGY, LLC**

NOW INTO COURT, through undersigned counsel, come Claimants, ENERGY

XXI GOM, LLC ("Energy XXI"); EPL OIL & GAS, LLC ("EPL") and ARENA ENERGY, LLC

("Arena," and together with Energy XXI and EPL, the "Claimants"), who under protest and without

prejudice to their position that this exoneration from and/or limitation of liability proceeding is

improper and should be dismissed, for their answer and claim to the Verified Complaint for

Exoneration from and/or Limitation of Liability filed by Hedron Holdings, LLC, as owner and

Triton Diving Services, LLC as bareboat charterer and owner *pro hac vice* ("Limitation

Complainants"), would respectfully show:

**I.  ANSWER TO COMPLAINT**

COMES NOW Claimants, for answer to the Verified Complaint for Exoneration

from and/or Limitation of Liability (Rec. Doc. 1) (the "Complaint"), under protest and without

prejudice to their position that this exoneration from and limitation of liability and/or limitation of

liability proceeding is improper and should be dismissed, would respectfully show:

1316159v.1

1.1

Claimants are without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 1 of the Complaint, and therefore deny same.

1.2

Claimants are without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 2 of the Complaint, and therefore deny same.

1.3

Claimants are without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 3 of the Complaint, and therefore deny same.

1.4

Claimants are without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 4 of the Complaint, and therefore deny same.

1.5

Claimants admit this is an admiralty and maritime claim.

1.6

Claimants deny the allegations in Paragraph 6 of the Complaint.

1.7

Claimants are without sufficient knowledge or information to form a belief as to the truth of all allegations in Paragraph 7 of the Complaint, and therefore deny same.

1.8

Claimants deny the allegations in Paragraph 8 of the Complaint.

1.9

Claimants are without sufficient knowledge or information to form a belief as to the truth of all allegations in Paragraph 9 of the Complaint, and therefore deny same.

1316159v.1

1.10

Claimants are without sufficient knowledge or information to form a belief as to the truth of all allegations in Paragraph 10 of the Complaint, and therefore deny same.

1.11

Claimants are without sufficient knowledge or information to form a belief as to the truth of all allegations in Paragraph 11 of the Complaint, and therefore deny same.

1.12

Claimants are without sufficient knowledge or information to form a belief as to the truth of all allegations in Paragraph 12 of the Complaint, and therefore deny same.

1.13

Claimants are without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 13 of the Complaint, and therefore deny same.

1.14

The allegations in Paragraph 14 of the Complaint contain statements and/or legal conclusions for which no answer is required; however, in an abundance of caution, and to the extent such an answer may be required, said allegations are denied and Claimants reserve the right to contest the amount and sufficiency of the security provided.

1.15

Claimants deny the allegations in Paragraph 15 of the Complaint.

1.16

Claimants deny the allegations in Paragraph 16 of the Complaint.

1316159v.1

1.17

Claimants are without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 17 of the Complaint, and therefore deny same except to admit that Claimants have sustained damage to their pipelines and resulting economic losses.

1.18

Claimants are without sufficient knowledge or information to form a belief as to the truth of all allegations in Paragraph 18 of the Complaint, and therefore deny same.

1.19

Claimants are without sufficient knowledge or information to form a belief as to the truth of all allegations in Paragraph 19 of the Complaint, and therefore deny same.

1.20

Claimants are without sufficient knowledge or information to form a belief as to the truth of all allegations in Paragraph 20 of the Complaint, and therefore deny same.

1.21

Claimants are without sufficient knowledge or information to form a belief as to the truth of all allegations in Paragraph 21 of the Complaint, and therefore deny same.

1.22

Claimants are without sufficient knowledge or information to form a belief as to the truth of all allegations in Paragraph 22 of the Complaint, and therefore deny same.

1.23

Claimants are without sufficient knowledge or information to form a belief as to the truth of all allegations in Paragraph 23 of the Complaint, and therefore deny same.

1.24

Claimants deny the allegations in Paragraph 24 of the Complaint.

1316159v.1

1.25

Claimants deny the allegations in Paragraph 25 of the Complaint and reserve the right to contest the declared value of the Derrick Barge EPIC HEDRON ("HEDRON") and the sufficiency of security in this matter.

1.26

Claimants deny the allegations in Paragraph 26 of the Complaint and reserve the right to contest the declared value of the pending freight and the sufficiency of security in this matter.

1.27

Claimants deny the allegations in Paragraph 27 of the Complaint and reserve the right to contest the value of the HEDRON, her pending freight and the sufficiency of security in this matter.

1.28

The allegations in Paragraph 28 of the Complaint contain statements and/or legal conclusions for which no answer is required; however, in an abundance of caution, and to the extent such an answer may be required, said allegations are denied and Claimants reserve the right to contest the amount and sufficiency of the security provided.

1.29

The allegations in Paragraph 29 of the Complaint contain statements and/or legal conclusions for which no answer is required; however, in an abundance of caution, and to the extent such an answer may be required, said allegations are denied and Claimants reserve the right to contest the amount and sufficiency of the security provided.

1.30

Claimants deny the allegations in Paragraph 30 of the Complaint.

1316159v.1

1.31

Claimants deny the allegations in Paragraph 31 of the Complaint.

1.32

Claimants admit that this an admiralty and maritime claim but deny all other allegations in Paragraph 32 of the Complaint.

## II.  AFFIRMATIVE DEFENSES

2.1

The Complaint fails to state a claim upon which relief may be granted.

2.2

Limitation Complainants lack standing.  In particular, Triton Diving Services, LLC is not the owner or an owner of the HEDRON.  Pursuant to the provisions of 46 U.S.C. § 30505 *et seq.* only a vessel owner has standing to assert a claim for limitation of liability.

2.3

The HEDRON was operated in a reckless and wanton manner on or about August 29, 2021.

2.4

The HEDRON was unseaworthy on or about August 29, 2021.

2.5

On the morning of August 29, 2021, Limitation Complainants knew there are many oil pipelines located on the bottom of the Gulf of Mexico.

2.6

Energy, EPL, and Arena own or utilize such pipelines.

2.7

Claimants sustained property damage that impairs the serviceability of their oil pipelines located on the Outer Continental Shelf and have incurred other resulting economic damages as a result of the reckless and wanton operation of the HEDRON.

2.8

The negligence of Limitation Complainants, their agents and employees caused and/or contributed to the reckless and wanton operation of the HEDRON on August 29, 2021.

2.9

Limitation Complainants had privity and knowledge of the above mentioned negligence, fault and unseaworthiness, and thus are ineligible to seek limitation and/or exoneration.

2.10

The Limitation of Liability Act as applied herein is unconstitutional, depriving Claimants of their right to equal protection and due process of law.

2.11

On information and belief, the HEDRON has a market value and/or freight then pending that far exceeds the value alleged by Limitation Complainants.   This Court should accordingly appoint a commissioner in due course and conduct a hearing to ascertain the values at issue.

2.12

Claimants further affirmatively allege the Complaint should be denied due to the negligence and fault of Limitation Complainants, the unseaworthiness of the HEDRON, and the privity and knowledge of the Limitation Complainants.

1316159v.1

2.13

Claimants further affirmatively allege there was insurance coverage(s) on the HEDRON insuring the HEDRON and Limitation Complainants in the event of an occurrence such as that which is the subject of Claimants' claim, and all proceeds of said insurance policy(ies) should be included in any limitation proceeding, in the event this Court determines that a limitation proceeding is appropriate and proper.

2.14

Claimants further allege that Limitation Complainants failed to provide adequate security, both in form and amount, and, for that reason, the Complaint should be dismissed and/or denied.

2.15

Without waiving the claim that Limitation Complainants are not entitled to exoneration from or limitation of liability, Claimants reserve the right to demand a trial by jury in the forum of its choice pursuant to the "saving to suitors" clause of the Judiciary Act of 1789, 28 U.S.C. §1333.

2.16

Limitation Claimants knowingly assumed the risk by failing to use prudence in mooring the HEDRON in Fouchon, Louisiana and/or failing to monitor the HEDRON's moorings as Hurricane Ida approached on August 29, 2022 and allowing it drift away from port without immediately deploying an emergency anchor.

2.17

Limitation Claimants have waived the right to seek exoneration from and/or limitation of liability as a result of the August 29, 2021 incident involving the HEDRON.

1316159v.1

2.18

A party who violates a statutory rule intended to prevent maritime accidents is presumed to have caused the accident.  On information and belief, Limitation Claimants have violated such statutory rules.

2.19

There is a presumption under maritime negligence law that a moving vessel is at fault when it collides with a stationary object.  On information and belief, that presumption applies here.

### III.  CLAIM FOR DAMAGES

COMES NOW Claimants Energy, EPL and Arena, for their claim for damages, would respectfully show:

3.1

This Court has jurisdiction over Claimant's *in personam* action against the Limitation Complainants in excess of, and without regard to, Limitation Complainants' unmeritorious Complaint in Limitation, on the following grounds:

3.2

Claimants' action for damage to their property caused by the unseaworthiness of the HEDRON, the fault of her operator, master or crew, within the privity and knowledge of her owner, or otherwise caused by the culpable acts or omissions of the Limitation Complainants, as alleged herein, is a case within the admiralty and maritime jurisdiction of this Court pursuant to 28 U.S.C. § 1333.

3.3

Claimants' action for damage to their property, as alleged herein, is also a case within this Court's jurisdiction in that it arises out of, or in connection with, operations conducted

1316159v.1

on the Outer Continental Shelf Lands of the United States and involving exploration, development,

or production of minerals on or under said lands.  Accordingly, this Court has jurisdiction over

Claimants' case pursuant to 28 U.S.C. § 1331 and 43 U.S.C. § 1349(b).

3.4

Energy, EPL and Arena own or utilize oil pipelines located in the Gulf of Mexico

in the immediate vicinity of the course taken by the HEDRON on August 29, 2021.

3.5

These pipelines are located on the Outer Continental Shelf of the United States.

**FACTUAL BACKGROUND**

3.6

Claimants hold interests in the following Outer Continental Shelf leases located in

the South Timbalier area adjacent to Southeast Louisiana, from which Claimants conduct

operations for the exploration, development, and production of oil and gas:

| BLOCK | LEASE | RECORD TITLE % | PLAINTIFF |
|---|---|---|---|
| 21 | ST LA 1423 | 100% | ENERGY XXI |
| 21 | OCS 00263 | 100% | ENERGY XXI |
| 22 | OCS 00165 | 100% | ENERGY XXI |
| 23 | OCS 00166 | 25%/12.5% | EPL/ENERGY XXI |
| 27 | OCS-G 01443 | 100% | ENERGY XXI |
| 27 | OCS-G 27147 | 100% | ENERGY XXI |
| 28 | OCS-G 01362 | 100% | ENERGY XXI |
| 26 | OCS-G 02620 | 100% | EPL |
| 26 | OCS-G 1870 | 100% | EPL |
| 26 | OCS-G 01361 | 100% | EPL |
| 41 | OCS-G 24954 | 100% | EPL |
| 151 | OCS-00463 | 70% | Arena |

3.7

During the period immediately preceding August 29, 2021, the HEDRON was

performing service for Talos Production, Inc., Talos Energy LLC and Talos Energy Operating

Company in the Gulf of Mexico.

- 10 -

3.8

The HEDRON was owned by Defendant Hedron Holdings, LLC and operated and crewed by Defendant Triton Diving Services, LLC under charter.

3.9

In the days leading up to August 29, 2021, Hurricane Ida, a dangerous storm that would ultimately strengthen into a category 4 hurricane, approached the coast of Southeastern Louisiana and weather conditions in the Gulf of Mexico deteriorated.

3.10

Despite the strong weather and dangerous weather conditions in the Gulf of Mexico, the HEDRON, at the direction and control of one or more of the Defendants, remained on the coast of the Gulf of Mexico and endangered the lives and property of all onboard and in the surrounding area.

3.11

The HEDRON was negligently moored and/or secured, which enabled it to break free from its location in the winds and seas created by Hurricane Ida, permitting the vessel to drift away from its fixed location into the Gulf of Mexico.  On information and belief, while the vessel was adrift, one or more of its anchors dragged across the seabed, including the South Timbalier area where the Claimants' leases are located.

3.12

As the HEDRON crossed the South Timbalier area while adrift, one or more of its anchor struck and damaged pipelines used by Claimants to transport oil and gas produced through operations on their Outer Continental Shelf leases.

1316159v.1

3.13

As a result of the HEDRON's anchor(s) striking and damaging the pipelines, Claimaints lost oil and gas that escaped from the pipeline, have incurred costs to assess and repair damages to the pipelines and/or have been required to incur capital costs to access alternative pipelines, have incurred increased costs to transport oil and gas produced from their leases and incurred damages resulting from extensive downtime of oil and gas production due to damage to such pipelines.

3.14

Claimants' property damage, increased costs and expenses, production downtime and all resulting damages were proximately caused by the unseaworthiness of the DB *Hedron*, her engines, equipment, gear, machinery, appurtenances and tackle.

3.15

The damage complained of herein was proximately caused by the fault and/or negligence attributable to Defendants in the following non-exclusive particulars, to wit:

a.      Failing to operate the HEDRON in a reasonably safe manner;

b.      Failing to have a lookout;

c.      Failing to adequately man/crew the HEDRON;

d.      Failing to take reasonable care under the circumstances;

e.      Failing to comply with United States Coast Guard rules, regulation and guidance as well as failing to comply with International Maritime Organization's International Convention for the Safety of Life at Sea requirements;

f.      Failing to follow the weather advisories and marine bulletins issued by the National Weather Service.

1316159v.1

g.      Failing to maintain the HEDRON and its appurtenances and/or equipment in a safe and reasonable manner;

h.      Failing to take reasonable precautions for the safety of life and property on board and in the vicinity of the HEDRON;

i.      Failing to properly assess the weather conditions prior deciding to remain on location;

j.      Failing to have an emergency plan in the event the HEDRON became adrift;

k.      Failing to adopt practices, policies, and procedures designed specifically to prevent the HEDRON from drifting and dragging anchor(s) and damaging pipelines like the damages sustained by Claimants;

l.      Failing to adequately train the crew of the HEDRON;

m.      Failing to take adequate and reasonable measures to secure the HEDRON knowing it was likely to encounter wave and wind conditions accompanying a dangerous category 4 hurricane;

n.      Other negligent acts and/or omissions to be shown at the trial of this action.

3.16

As a direct and proximate result of Defendants egregious misconduct, statutory violations, wanton disregard for the safety of life and property and/or the unseaworthiness of the HEDRON, Claimants are entitled to recover the following damages, among others:

a.      Physical damage to pipeline(s);

c.      Costs associated with examining, testing and repairing the pipeline(s);

e.      Loss of use;

f.      Lost and/or diminished production;

g.      Decreased operational capacity;

- 13 -

h.      Increased costs to transport hydrocarbons;

i.      Loss of revenue, income or profit;

j.      Exemplary and punitive damages;

k.      Depreciation;

l       Attorney's fees; and

m.      All other damages established at trial

## IV.  JURY DEMAND

Claimants demand a trial by jury on their Claim herein.

WHEREFORE, Claimants pray for a trial by jury on their Claim and pray:

(a)  That the Verified Complaint For Exoneration from and/or Limitation of Liability be dismissed; or, alternatively,

(b)  That the Verified For Exoneration from and/or Limitation of Liability be denied, rendering judgment in favor of Claimants and against Limitation Complainants jointly, severally and in solido, specifically finding liability and denying the right to limit liability and/or exoneration; that should this Court retain jurisdiction it is determined Claimants' entitlement to damages, that judgment be rendered in Claimants' favor, and against Limitation Complainants, for a sum within the jurisdictional limits of this Court, all costs of these proceedings including general damages, incidental damages, consequential damages, expert costs, engineering fees and expenses, surveying fees and expenses, attorney's fees, together with punitive

1316159v.1

damages, pre-judgment and post-judgment interest and all other general and equitable

relief to which Claimants may show themselves entitled.

Respectfully submitted,

*/s/  W. Brett Mason*
Justin P. Lemaire, La. Bar No. 29948
Edward B. Poitevent, La. Bar No. 10564
Paul J. Masinter, La. Bar No. 18324
W. Brett Mason, La. Bar No. 22511 (T.A.)
Of
STONE PIGMAN WALTHER WITTMANN L.L.C.
909 Poydras Street, Suite 3150
New Orleans, Louisiana  70112
Telephone: (504) 581-3200
Facsimile: (504) 581-3361
Email: jlemaire@stonepigman.com
        epoitevent@stonepigman.com
        pmasinter@stonepigman.com
        bmason@stonepigman.com

*Attorneys for Energy XXI GOM, LLC, EPL Oil &*
*Gas, LLC and Arena Energy, LLC*

1316159v.1